UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X
In re:                                                                          E.D.NY. Bankr. Case
                                                                                     No. 09-44979 (ESS)
LESNO, LLC,
                                                                                     Involuntary Chapter 7 Proceedings
    Debtor.
------------------------------------------------------------X
TALLY M. WIENER, ESQ.

                                                                                     E.D.N.Y. Case

    Appellant,                                                    13-CV-831 (JBW)

v.

LESSNO, LLC

    Appelle.
------------------------------------------------------------X

## BRIEF OF APPELLEE LESNO, LLC

# TABLE OF CONTENTS

| | |
|---|---|
| Statement of the Basis of Appellate Jurisdiction | 1 |
| Statement of the Issues Presented and the Standard of Appellate Review | 1 |
| Statement of the Case | 2 |
| Legal Argument: | |
| I. The Bankruptcy Court Did Not Abuse its Discretion in Dismissing the Case and Denying Appellant's Tangential Requests | 4 |
| II. The Bankruptcy Court Should Not Have Granted the Claim Motion and Appellant Lacked Standing to Seek Payment of Fees or to Oppose Dismissal of the Case | 8 |
| Conclusion | 15 |

# TABLE OF AUTHORITIES

American Preferred Prescription, Inc., 194 B.R. 721
(Bankr. E.D.N.Y. 1996) ............................................................................. 9, 10, 11, 14

Clear Blue Water, LLC v. Oyster Bay Management Co., LLC,
476 B.R. 60, 65-66 (E.D.N.Y. 2012) ......................................................... 1

Deutsche Bank AG, Long Branch v. Metromedia Fiber Network,
Inc. (In re Metromedia Fiber Network, Inc.), 416, F.3d 135, 142
(2d Cir. 2005), quoting New England Dairies, Inc. v. Dairy Mar
Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.),
351 F.3d 86, 92 (2d Cir. 2003) ................................................................... 11

In re Brown, 147 B.R. 55 (Bankr.D.Mass. 1992) ...................................... 10

In re Hull, 339 B.R. 304, 308 (Bankr. E.D.N.Y. 2006) .............................. 6

In re Olsen, 334 B.R. at 104 ...................................................................... 10, 14

In re Oxford Homes, Inc. 204 B.R. 264, 267-68 (Bankr.D.Me. 1997) ...... 11

In re S & Y Enterprises, LLC -- B.R. - , 2012 WL 4510690
Bankr. E.D.N.Y. Sept. 28, 2012) ............................................................... 11, 14

In re: Smith, 507 F.3d 64 (2d Cir. 2007) .................................................... 1

In re Zick, 931 F.2d 1125 (6th Cir. 1991) ................................................... 1

Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev.
Group, Inc.), 352 F.3d 671,678 (2d Cir. 2003) .......................................... 2

Smith v. Geltzer (In re Smith), 507 F.3d 64, 72 (2nd Cir.
2007) (quoting Dinova v. Harris (In re Dinova), 212
B.R. 437, 442 (B.A.P. 2d Cir. 1997) .......................................................... 6, 7

State Bank of India v. Chalasani (In re Chalasani),
92 F.3d 1300, 1307 (2d Cir. 1996) ............................................................. 1

2 Norton Bankruptcy Law and Practice 2d § 42.28, at 42-159
(2nd ed. 1994) ............................................................................................. 10

3 Collier on Bankruptcy, ¶ 503.04[4], at 503-55 (15th ed. 1995) ............... 10

4 Collier on Bankruptcy, ¶ 503.11[4] ......................................................... 11

## STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

The appeal here involves a final order of the United States Bankruptcy Court for the Eastern District of New York. Under 28 U.S.C. § 158(a), district courts are vested with appellate jurisdiction to "affirm, modify, or reverse a bankruptcy judge's judgment, order or decree." Fed. R. Bankr.P. 8013. See also, Clear Blue Water, LLC v. Oyster Bay Management Co., LLC, 476 B.R. 60, 65-66 (E.D.N.Y. 2012).

## STATEMENT OF THE ISSUES PRESENTED AND THE STANDARD OF APPELLATE REVIEW

The issue presented in this case is whether the Bankruptcy Court erred, as a matter of law, in granting the Lessno, LLC's motion to dismiss the bankruptcy case where the motion was: (i) supported by the Chapter 7 Trustee; (ii) supported by the creditors that initially commenced the action by filing an Involuntary Petition, as they agreed to dismissal of the action as part of a broader resolution of disputes between them and the ultimate owners of Lessno, LLC; (iii) unopposed by all other pre-petition creditors who, pursuant to the terms of the dismissal were to be paid in full; and (iv) objected to only by the former counsel of the petitioning creditors in an effort to assert a claim for administrative fees.

A bankruptcy court's decision to dismiss Chapter 7 case for cause will be reversed on appeal only for an abuse of discretion. In re Zick, 931 F.2d 1124 (6th Cir. 1991). As the Second Circuit held in In re Smith, 507 F.3d 64 (2d Cir. 2007) and State Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300, 1307 (2d Cir.1996), "decisions [that] invoke the exercise of a bankruptcy court's equitable powers," are thus "dependent upon the facts and circumstances of each case," and "are reviewed for an excess of allowable discretion." Smith, 507 F.3d at 73, quoting In re Chalasani, 92 F.3d at 1307.

A bankruptcy court exceeds its allowable discretion where its decision (1) "rest[s] on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding," or (2) "cannot be located within the range of permissible decisions," even if it is "not necessarily the product of a legal error or a clearly erroneous factual finding." Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.), 352 F.3d 671, 678 (2d Cir.2003)

## STATEMENT OF THE CASE

On June 12, 2009, certain creditors (the "Petitioning Creditors") filed an Involuntary Petition under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") against Lessno, LLC (the "Debtor"). The Debtor contested the filing of the Involuntary Petition. The Bankruptcy Court scheduled a trial on the Involuntary Petition.

The Petitioning Creditors retained Appellee, Tally M. Weinder, Esq. (the "Appellee") to act as trial counsel. On November 7, 2011, the Bankruptcy Court entered an Order for Relief against the Debtor. Thereafter, on or about November 8, 2011, Robert L. Geltzer was appointed the Debtor's Chapter 7 trustee (the "Trustee").

In December of 2011, the Appellee filed a motion to withdraw from her representation (Docket No. 126). In moving for withdrawal, Appellee stated that the Petitioning Creditors "knowingly and freely assent to end my employment as their attorney of record." (Docket No. 126, page 5, par. 9). More importantly, Appellee explained that she was also seeking withdrawal because the Petitioning Creditors "have rendered their representation unreasonably difficult" due to their "inability to pay or commit to future payment arrangements." (Id. at page 3, par. 4).

After the entry of the Order for Relief, the Trustee and the Debtor negotiated an agreement which resulted in The Debtor's filing of a motion to dismiss this case on July 6, 2012 (the "Motion to Dismiss"). The Motion to Dismiss incorporates a global resolution that was reached between the Debtor's ultimate owner, an entity known as Neveq ("Neveq"), the Petitioning Creditors and related entities.

Neveq and related entities (on the one hand) and the Petitioning Creditors and other related entities (on the other hand) were involved in multiple litigations across the world. Ultimately, the parties resolved all of their disputes and entered into a Global Settlement Agreement. The Global Settlement Agreement calls for the Petitioning Creditors and Neveq to each waive their pre-petition claims against the Debtor and for the dismissal of the Debtor's bankruptcy case. The Global Settlement Agreement also calls for all parties to bear their own costs in the The Debtor bankruptcy proceedings.

After entry of the Global Settlement Agreement, the Debtor negotiated with the Trustee in this case to pay, in full, the remaining claims against the estates (consisting of a small amount of trade creditor claims), the Debtor's attorneys' fees, U.S. Trustee fees, and the fees and expenses of the Trustee and his professionals. As explained in the Motion to Dismiss:

> [A]fter the Order for Relief was entered in this matter, the Debtor's ultimate owner, Neveq, and other related entities owned by or affiliated with Neveq, reached a global resolution (the "Global Resolution") with the Petitioning Creditors and other related entities owned by or affiliated with them. In reaching the Global Resolution, the Debtor, Neveq, the Petitioning Creditors and the Chapter 7 trustee have reached an agreement regarding the disposition of this case. In summary, the parties have agreed to request that The Bankruptcy Court dismiss this bankruptcy case. * * * In accordance with the Global Resolution, the Petitioning Creditors have agreed to withdraw all of their pre-petition claims against the Debtor, in the aggregate amount of approximately $245,000. ***

(Docket No. 132 at pages 4-5).

The Trustee supported the Motion to Dismiss. The Petitioning Creditors did not oppose the Motion to Dismiss. The other creditors of the Debtor did not oppose the Motion to Dismiss. The Office of the United States Trustee did not oppose the Motion to Dismiss.

The Appellee was the only person to oppose the Motion to Dismiss. In addition to opposing the Motion to Dismiss, the Appellee filed her own, pro se, request to be paid administrative claims and expenses for her representation of the Petitioning Creditors at trial (the "Claim Motion"). Appellant, in an effort to avoid dismissal, also requested that the Court instead order the Debtor to file schedules, and other documents. Appellant, after placing the terms of the Global Settlement into issue, also sought tangential relief regarding the submission of a redact version of the Global Settlement Agreement as part of the Debtor's motion to dismiss. The Debtor opposed the Appellee's Claim Motion.

The Bankruptcy Court granted the Motion to Dismiss and the Claim Motion. The Bankruptcy Court denied the tangential requests of the Appellant.

## ARGUMENT

### I.

### THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN DISMISSING THE CASE AND DENYING APPELLANT'S TANGENTIAL REQUESTS

In granting the Motion to Dismiss, and denying the various tangential relief that Appellant sought in an effort to prevent dismissal, the Bankruptcy Court considered a host of factors based upon its experience with the matter and pertinent developments in the case. The

Bankruptcy Court fully explained its thinking in granting the Motion to Dismiss, examining all of the factors and matters required by the Second Circuit, and citing to applicable law.

As set forth above, the Bankruptcy Court's decision is not to be disturbed absent an abuse of discretion. A *verbatim* review of the Court's decision, and decision making process, is perhaps the best testament to the Bankruptcy Court's consideration of the Motion to Dismiss. The Bankruptcy Court ruled:

> WHEREAS, on June 12, 2009, Trans Am Travel Inc., Smart Travel Network, Inc., and Mario I. Sotirov (the "Petitioning Creditors") commenced an involuntary Chapter 7 bankruptcy case against Lessno LLC by filing a petition for relief under Chapter 7 of the Bankruptcy Code; and
>
> WHEREAS, on July 31, 2009, the Debtor filed an Answer objecting to the involuntary petition and seeking dismissal of this case; and
>
> WHEREAS, on November 7, 2011, after trial, the Court allowed the involuntary petition, overruled the Answer, and directed that an order for relief be entered; and
>
> WHEREAS, on November 8, 2011, Chapter 7 Trustee Robert L. Geltzer was appointed as interim Trustee of the Debtor, and thereafter was qualified and made permanent Trustee.
>
> WHEREAS, on July 6, 2012, the Debtor moved pursuant to Bankruptcy Code Section 707(a) to dismiss voluntarily this case for cause (the "Motion to Dismiss"); and
>
> WHEREAS, the record shows that after the entry of the Order for Relief, the Debtor's owner Neveq and certain affiliated entities entered into a settlement with the Petitioning Creditors and certain affiliated entities (the "Global Resolution"); and
>
> WHEREAS, the record shows that in connection with the parties' settlement, the Petitioning Creditors agreed to withdraw their claims against the Debtor; and
>
> WHEREAS, the record shows that in connection with the parties' settlement, Neveq has agreed to convert its prepetition claims to equity, rather than demand payment of those claims; and
>
> WHEREAS, the record shows that in connection with the parties' settlement, Neveq will pay in full all remaining claims against the Debtor's estate, which consist of "trade creditor claims, U.S. Trustee fees, chapter 7 trustee commissions and the fees and expenses of his professionals, the fees and costs of the Debtor's counsel, and the fees and expenses of other professionals involved in this case,"; and

WHEREAS, the Debtor argues that payment in full of all claims against the Debtor's estate, among other things, is cause to dismiss this case under Bankruptcy Code Section 707(a); and

WHEREAS, on July 25, 2012, Tally Wiener, former counsel for the Petitioning Creditors, filed limited opposition to the Motion to Dismiss (the "Objection") on grounds, among others, that she seeks the allowance of an administrative expense (the "Motion to Allow").

WHEREAS, on September 20, 2012, Ms. Wiener filed a motion to compel the Debtor to file schedules (the "Motion to Compel").

WHEREAS, on October 5, 2012, the Debtor filed a partially redacted letter brief and declaration in further opposition to the Motion to Allow (the "Letter Brief"), which attached a fully redacted Global Resolution as Exhibit A as support for its arguments in opposition to the Motion to Allow; and

WHEREAS, on October 5, 2012, the Debtor submitted unredacted copies of the Letter Brief and the Global Resolution (the "Supplement") to the Court and Ms. Wiener; and

WHEREAS, on October 12, 2012, Ms. Wiener filed a motion to strike the Supplement (the "Motion to Strike").

WHEREAS, on October 16, 2012, the Court held a hearing on the Motion to Dismiss and the Motion to Compel, at which the Debtor and the Trustee appeared in support of the Motion to Dismiss and in opposition to the Motion to Compel, Ms. Wiener appeared in opposition to the Motion to Dismiss and in support of the Motion to Compel, and the Court reserved decision.

WHEREAS, Bankruptcy Code Section 707(a) provides that "[t]he court may dismiss a case under this chapter only after notice and a hearing and only for cause"; and

WHEREAS, courts in this Circuit determine whether cause exists to dismiss a case by "looking at 'whether dismissal would be in the best interest of all the parties in interest,'" Smith v. Geltzer (In re Smith), 507 F.3d 64, 72 (2d Cir. 2007) (quoting Dinova v. Harris (In re Dinova), 212 B.R. 437, 442 (B.A.P. 2d Cir. 1997)); and

WHEREAS, the inquiry into whether dismissal is in the best interests of all the parties in interest is guided by equitable considerations and "committed to the sound discretion of the bankruptcy court," In re Hull, 339 B.R. 304, 308 (Bankr. E.D.N.Y. 2006); and

WHEREAS, "the best interest of the debtor 'lies generally in securing an effective fresh start upon discharge and in the reduction of administrative expenses leaving him with resources to work out his debts,'" Smith, 507 F.3d at 72 (quoting Dinova, 212 B.R. at 441); and

6

WHEREAS, in assessing the creditors' best interests, courts may consider the extent to which creditors will receive payment of their debts whether within or outside the bankruptcy process, see Smith, 507 F.3d at 72-74; and

WHEREAS, in assessing the creditors' best interests, courts may also consider the prejudice, if any, caused to creditors by the delay in their ability to pursue state law remedies for the collection of debts that they are owed, see Smith, 507 F.3d at 72; and

WHEREAS, the Second Circuit has held: the legislative history of section 707(a) does not preclude a debtor's ability to repay her debts from constituting cause for dismissal. This does not mean, however, that a debtor's ability to repay her debts is per se grounds for dismissal. Rather, we agree with the District Court that "the significance of [a debtor's] ability to repay her creditors is merely a[] part of the required inquiry into 'whether dismissal would be in the best interest of all parties in interest.'" Smith, 507 F.3d at 74 (quoting Smith v. Geltzer (In re Sueann M. Smith), No. 06 CV 2994, slip op. at 9 (E.D.N.Y. Oct. 18, 2006) (quoting Dinova, 212 B.R. at 442)), see In re Hopper, 404 B.R. 302, 309 (Bankr. N.D. Ill. 2009); and

WHEREAS, the record shows that the parties have reached a settlement that will end the accrual of administrative expenses associated with this Chapter 7 bankruptcy case; and

WHEREAS, the record shows that prejudice, if any, caused to the creditors by the delay in their ability to pursue state law remedies for the collection of the debts they are owed does not weigh against the dismissal of this case; and

WHEREAS, the record shows that the remaining creditors of the Debtor's estate will be paid in full outside the bankruptcy process; and

WHEREAS, based on the entire record, the Debtor has established cause for the dismissal of this Chapter 7 bankruptcy case; and

WHEREAS, the Court has considered all of the other arguments raised by the parties in support of and in opposition to the Motion to Dismiss.

NOW THEREFORE, it is hereby

ORDERED, that pursuant to Bankruptcy Code Section 707(a), this case is dismissed for cause; and it is further

ORDERED, that accordingly, the Motion to Compel is marked off the calendar; and it is further

ORDERED, that accordingly, the Motion to Strike is marked off the calendar.

The Bankruptcy Court properly identified the applicable legal principles to be considered, addressed the pertinent facts and considerations regarding the matter, and, within its sound discretion, granted the motion to dismiss, thereby mooting the other considerations.

The foregoing actions do not constitute an abuse of discretion. The Bankruptcy Court's dismissal of the case should be affirmed.

## II.

### THE BANKRUPTCY COURT SHOULD NOT HAVE GRANTED THE CLAIM MOTION AND APPELLANT LACKED STANDING TO SEEK PAYMENT OF FEES OR TO OPPOSE DISMISSAL OF THE CASE.

In granting the Claim Motion, the Bankruptcy Court, the Bankruptcy Court did not address two critical arguments (and applicable case law cited by the Debtor) that the Claim Motion should be denied. Specifically, the Bankruptcy Court did not address: (1) the fact that the Appellee alone – and not the Petitioning Creditors themselves --- requested payment of Appellee's fees and costs; and (2) that the Petitioning Creditors waived the right to be reimbursed their fees and costs as part of the Global Settlement Agreement.

The Petitioning Creditors did not file a motion for administrative fees to recoup the $3,000 paid to Appellee. The Petitioning Creditors did not support Appellant's unilateral request for fees. Instead, the Petitioning Creditors in fact abandoned and released <u>with prejudice</u> all claims in this estate, including all requests for attorneys' fees and costs. (Docket No. 132 at pages 4-5).

The Global Resolution confirms that Appellant is precluded from asking for compensation in this bankruptcy case. The Petitioning Creditors withrew with prejudice all claims asserted in the Bankruptcy Court and all motions seeking costs, fees or sanctions, and

agreed to bear their own costs. Moreover, Neveq did not and does not agree to pay Appellant's fees in the Motion to Dismiss. Appellant's application was therefore both unexpected and contrary to the plain language of the Global Resolution.

The Claim Motion relied upon Section 503(b) of the United States Bankruptcy Code (11 U.S.C. §503(b)). However, there does not appear to be a reported decision in this Circuit that entitles an attorney to seek reimbursement of her fees own and costs under Section 503(b) independent of her clients' request or support and in the face of an express waiver of all claims for legal fees against the estate. Instead, the case most directly on point in this District expressly rejects the premise that an attorney for a creditor or other party in interest can unilaterally request such relief.

In In re American Preferred Prescription, Inc., 194 B.R. 721 (Bankr. E.D. N.Y. 1996) ("In re American"), a law firm sought reimbursement from the estate for services rendered on behalf of a creditor pursuant to Section 503(b). At the time, the law firm's client --- the actual estate creditor --- "never applied to The Bankruptcy Court for reimbursement of its expenses . . . has been out of the case for over one year; and The Bankruptcy Court has never been asked to determine whether Hadiya's expense, as a former creditor, should be compensated for making a substantial contribution to this estate." In re American, 194 B.R. at 724. The Court concluded that under such circumstances, the law firm lacked standing on its own to seek payment under Section 503(b):

> In The Bankruptcy Court's reading of section 503(b)(4) in order for Marcus to be reimbursed under that section, Marcus' client, the former creditor Hadiya, must be an entity whose expense is allowable under section 503(b)(3)(D). The Marcus Firm, as Hadiya's former counsel, cannot simply apply for legal fees and re-imbursement of legal-related expenses independent of a determination that Hadiya's own expenses are allowable. The creditor must either, first or together with the attorney, apply to the court for reimbursement of expenses allowable under section 503(b)(3)(D)

> for making a substantial contribution to the case. The creditor should at least support the counsel requesting the fees which were incurred on behalf of the creditor and which result in a benefit to the estate, aside from, and in addition to those services which benefit the creditor.

In re American, 194 B.R. at 724.

While finding no "case law directly on point", the Court nevertheless found ample support for its conclusions in other cases recognizing that "in general, attorneys must look to their own clients for payment of legal fees and expenses" and that a finding of "substantial contribution by a creditor is a pre-condition to an award of counsel fees under Section 503(b)." The Court also found support in the two leading treatises of bankruptcy law. In re American, 194 B.R. at 724-726 (citing, In re Johnson, 126 B.R. 808 (Bankr.M.D.Fla.1991); In re Brown, 147 B.R. 55 (Bankr.D.Mass.1992); 2 Norton Bankruptcy Law and Practice 2d § 42.28, at 42–159 (2d ed. 1994); and 3 Collier on Bankruptcy, ¶ 503.04[4], at 503–55 (15th ed. 1995)).

The Southern District of New York has taken the same approach in In re Olsen, 334 B.R. 104 (Bankr. Oct. 27, 2005). In that case, a married woman filed an individual Chapter 11 proceeding and an apartment that she owned with her husband was sold at auction. The husband's law firm held the closing funds in escrow and represented his interests in connection with the sale. The husband's law firm sought compensation for the services rendered to him under Section 503. The Bankruptcy Court granted the request. In re Olsen, 334 B.R. at 104.

The District Court reversed. The District Court determined that, "the most natural reading" of Section 503, is that "the creditor, and not the creditor's attorney, may apply for the payment of fees from the estate." In re Olsen, 334 B.R. at 106.

The District Court did leave open the possibility that "under certain circumstances" "it may be appropriate to consider counsel's application to have been made 'on behalf of' his or her creditor client so that the court may proceed directly to its merits without multiplying

10

proceedings by standing on formalities." Id., citing, In re Oxford Homes, Inc., 204 B.R. 264, 267–68 (Bankr.D.Me.1997). However, the District Court indicated that those "certain circumstances" required showings of either client consent and/or evidence "that the professional is not seeking an award of compensation to him or herself. It is seeking reimbursement on behalf of the client." Id., citing, In re American, (supra) at 723-726; 4 Collier on Bankruptcy ¶ 503.11[4] (King et al. eds., 15th rev. ed. 2001)). In the case at hand, the District Court held that the law firm did not have the support of its client. Similarly, the law firm was seeking payment for itself rather than to reimburse the client. Id.

The District Court concluded recognizing that a bankruptcy court is not authorized "to create substantive rights that are otherwise unavailable under applicable law." Id. at 108, citing, Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.), 416 F.3d 136, 142 (2d Cir.2005), quoting New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.), 351 F.3d 86, 92 (2d Cir.2003) (internal quotation marks omitted). Revisiting Collier, the District Court agreed that that an attorney "has been retained by [her client] rather than by the estate" and "is entitled to look only to its' client for payment and not the estate" and that therefore "the right to request compensation, therefore belongs to the client and not to the professional." Id. at 107, citing 4 Collier at 503.11[4].

The Bankruptcy Court had the opportunity to consider many of these issues in In re S & Y Enterprises, LLC, --- B.R. ---, 2012 WL 4510690 (Bankr. E.D.N.Y. Sept. 28, 2012). In that case, an entity known as Bedford JV, LLC ("Bedford") was the unsuccessful bidder for the Debtors' properties. While not succeeding in acquiring the properties, Bedford sought an administrative expense allowance claiming that it made a substantial contribution to the case by:

(i) bidding in a manner that raised the ultimate sales price; (ii) drafting and prosecuting certain plans and disclosure statements which were not confirmed; (iii) participating in the case; and (iv) paying various counsel fees and expenses incurred by the Debtors' principals. Id. at *1  The Bankruptcy Court ultimately denied the allowance of Bedford's request, but examined the issue of Bedford's standing to bring such a request in a manner that warrants attention in the case at bar.

Ultimately, the Bankruptcy Court held that Bedford had standing to seek allowance of an administrative expense under Section 503(b).  In doing so, The Bankruptcy Court first recognized that such a remedy should be rarely and sparingly granted:

> Payment from the debtor's estate of a creditor's or other entity's counsel fees and expenses based on a substantial contribution in the bankruptcy case should be the exception, not the rule, because any allowed administrative expense diminishes the assets that are available for the debtor's plan of reorganization. . . . [B]oundaries are necessary to maintain the "integrity of § 503(b)," and where a creditor seeks to recover its counsel fees and expenses under Section 503(b), a court should "strictly limit compensation to extraordinary creditor actions which lead directly to tangible benefits to the creditors, debtor or estate." In re Best Prods. Co., 173 B.R. 862, 866 (Bankr.S.D.N.Y.1994). In this context, courts have concluded that Section 503(b) administrative expenses "should be kept to a minimum" and "be narrowly construed." Am. Preferred Prescription, 194 B.R. at 726. See, e.g., In re Villa Luisa, L.L.C., 354 B.R. 345, 348 (Bankr.S.D.N.Y.2006) (holding that "[c]laims for substantial contribution are ... narrowly construed and are subject to strict scrutiny").

Id. at *4.

The Bankruptcy Court then reviewed various cases considering the scope of standing for persons to seek administrative claims. The Bankruptcy Court concluded that:

> Section 503(b)'s enumeration of categories of prospective applicants for a substantial contribution administrative expense is illustrative, not exclusive. Section 503(b)(3)(D) and the cases that interpret it recognize the prospect that a substantial contribution in a Chapter 11 case may come from many quarters, and that sometimes, an applicant's efforts in advancing a debtor's reorganization are of such a nature and extent that the reasonable costs of those efforts should be shifted from the applicant to the estate. Viewed another way, Section 503(b)(3)(D) opens

12

> the door to the possibility that where the estate as a whole directly benefits from an entity's participation in a Chapter 11 case, that entity's counsel fees and expenses may be paid as an administrative expense. But Section 503 does not open that door too wide, and the inquiry in each situation should be case-specific and fact-intensive.

Id. at *6.

In reaching that conclusion, the Bankruptcy Court reviewed cases involving various participants in a Chapter 11 case that sought administrative expense claims including: creditors; third-party plan funders; bidders; and investors. Id. at *5-6. The Bankruptcy Court did not address specifically whether an attorney for a participant --- acting alone and without the participant's support --- could unilaterally seek an allowance under Section 503.

The Bankruptcy Court also strictly confined the grounds upon which an applicant could assert a "substantial contribution". The Bankruptcy Court required proof of "services in the bankruptcy process that yielded a direct and significant benefit to the bankruptcy estate or the parties as a whole" arising from circumstances that are "case-specific, fact-intensive – and unusual." Id. at *10. Similarly, an entity not specifically identified as being able to request relief under Section 503 must make a "substantial showing" in order to shift its counsel fees and costs to the Debtors' estates. Id. at * 11.

In light of the various factors identified above, Appellant's request should have been denied. This is true for a litany of reasons:

The Petitioning Creditors withdrew all claims, including those for counsel fees and expenses, as part of the Global Resolution. As explained in the case law, and Collier's, Appellant can have no better right to recover fees and costs incurred on her clients' behalf under Section 503(b) than her clients have to such relief. Appellant's clients withdrew "all" claims with prejudice in this case, including, specifically, claims for attorneys' fees and costs.

Accordingly, Appellant cannot preserve a right to fees when the clients themselves have relinquished their rights to such fees.

The Petitioning Creditors have not incurred the requested fees. The Petitioning Creditors have not made the request for fees. The Petitioning Creditors have not supported Appellant's request for fees. The Petitioning Creditors have <u>waived</u> the right to any payments in this case. The Petitioning Creditors have played no role in this case for nearly a year. The Petitioning Creditors did not pay Appellant directly (other than a nominal amount) and raised no quarrel with her withdrawal as counsel. Appellant is not seeking the fees to reimburse her clients, but rather to pay herself. Appellant was not a participant in this case like the applicant in <u>In re S & Y</u> and lacks the joinder or support of her clients as mandated by <u>In re American</u> and <u>In re Olsen</u>. Accordingly, Appellant lacks standing to bring the request for fees.

The Application to support the allowance of an administrative claim contradicts the general and well settled rule that attorneys for non-debtors must look to their own client rather than the estate for payment. Appellant certainly has the right to pursue collection actions from her clients. However, she has not shown in her motion the unusual or extraordinary facts or circumstances that would give rise to the allowance of a claim here. There is no showing that Appellant went beyond the zealous representation of her clients' own interests to pursue or obtain a goal for the estate as a whole or the creditor body in its entirety. Indeed, the successful resolution of this case turns upon: (i) the entire withdrawal <u>with prejudice</u> of all claims by the Petitioning Creditors in this case as part of a Global Resolution of a myriad of litigations across the globe; (ii) voluntary payments by The Debtor's ultimate owner to fully satisfy all unsecured creditors and the allowed Chapter 7 trustee fees and expenses; and (iii) the support and endorsement of the Chapter 7 trustee.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that the Bankruptcy Court should affirmed in its decision to dismiss the case, and to deny the tangential relief requested by the Appellant, but should be reversed in granting the Claim Motion

Respectfully submitted,

_____
Michael J. Connolly, Esq.
FORMAN HOLT ELIADES &
YOUNGMAN, LLC
80 Route 4 East, Suite 290
Paramus, NJ 07652
*Attorneys for Debtor-Appellee*

Dated: April 19, 2013
        New York, NY